# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR ARTIS,<br><br>Defendant. | Case No. '25 MJ208<br><br><u>COMPLAINT FOR VIOLATION OF</u><br><br>Title 18, U.S.C. §922(a)(1)(A) and (B) – Dealing Firearms without a License;<br><br>Title 18, U.S.C. §922(o) and 924(a)(2) - Possession of a Machinegun<br><br>Title 26, U.S.C., §5861(d) – Possession of an Unregistered Firearm |

The undersigned complainant being duly sworn states:

## COUNT ONE

Beginning no later than September 25, 2024, and continuing through November 21, 2024, within the Southern District of California, defendant TAYLOR ARTIS, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms; in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

## COUNT TWO

On or about September 25, 2024, within the Southern District of California, defendant TAYLOR ARTIS did knowingly possess a machinegun, to wit: one machinegun conversion device, which is a machinegun as defined in 26 U.S.C. § 5845(b), in violation of Title 18 United States Code, Sections 922(o) and 924(a)(2).

## COUNT THREE

On October 2, 2024, in the Southern District of California, defendant TAYLOR ARTIS, did knowingly possess a firearm, to wit: a non-serialized privately made rifle with a barrel of less than 16 inches in length, not registered to him in the National Firearms

Registration and Transfer Record, in violation of Title 26, United States Code, Section 5861(d).

## COUNT FOUR

On or about October 23, 2024, within the Southern District of California, defendant TAYLOR ARTIS did knowingly possess a machinegun, to wit: one machinegun conversion device, which is a machinegun as defined in 26 U.S.C. § 5845(b), in violation of Title 18 United States Code, Sections 922(o) and 924(a)(2).

The complainant states that this complaint is based on the attached Probable Cause Statement, which is incorporated herein by reference.

ERICA BAASTEN
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn and attested to under oath by telephone, in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 on this __16__ day of January of 2025.

HON. MITCHELL D. DEMBIN
United States Magistrate Judge

# PROBABLE CAUSE STATEMENT

Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included details of every aspect of the investigation. Dates and times are approximate.

## BACKGROUND

In September of 2024, ATF Special Agents received information from a Confidential Informant ("CI")[1] regarding an individual, identified by law enforcement as Taylor ARTIS, that had firearms available for sale. Throughout the investigation, an ATF Undercover Agent (UC) purchased firearms – including short barrel rifles and MCDs – and ammunition from ARTIS during controlled purchase operations.[2]

"Machinegun Conversion Devices" ("MCD") refers to any object or item manufactured or utilized in the conversion of a semi-automatic firearm to an automatic firearm. MCDs are machine guns under the National Firearms Act, even when not installed. MCDs are easily integrated with semiautomatic firearms to illegally convert them to fire automatically. MCDs include conversion devices for certain semiautomatic pistols, commonly referred to as "switches," "Glock switches," or "buttons." Conversion with "switches" is fast, simple, and requires little technical expertise. Most conversions typically involve removal of the original polymer slide cover plate on a Glock or similar pistol and replacement with the conversion device. In some cases, the device may actually be attached to the existing slide cover plate. Among other styles, the conversion devices can be made of metal or made utilizing some form of 3D printing device and a type of printing medium.

---

[1] The ATF CI involved in this investigation is paid subsistence compensation in exchange for cooperation. The CI has provided truthful and credible information related to this investigation and much of the information provided by the CI has been corroborated by further investigation, including the controlled firearm purchases described in this complaint. A criminal records check revealed the CI has no convictions. [Confirming that nothing pending that CI is working off?]

[2] The controlled purchase operations were video/audio recorded. Prior to and immediately after the first controlled purchase operation on September 25, 2024, the CI was searched, and no contraband was located.

A rifle with a barrel of less than 16 inches in length or an overall length under 26 inches (a "short-barreled rifle" or "SBR") must be registered in accordance with the National Firearms Act. A query of the National Firearms Registration and Transfer Record revealed that there is no history of ARTIS registering any firearms that meet the registration requirements as described in the National Firearms Act. Moreover, the SBR that ARTIS sold the UC as described below was non-serialized and, therefore, was not recorded or registered to ARTIS in the National Firearms Registration and Transfer Record.

**SEPTEMBER 25, 2024 – CONTROLLED PURCHASE OF THREE FIREARMS**

On September 25, 2024, ATF Special Agents organized a controlled purchase operation for the purchase of three firearms from ARTIS in exchange for $2,500. For this controlled purchase, the CI arranged to meet ARTIS at an agreed-upon parking lot in San Diego County, which is within the Southern District of California. The UC and the CI traveled to the purchase location in an undercover vehicle (the "UCV") and arrived at the parking lot at approximately 6:30 p.m. ARTIS was at the parking lot at the time the UC and CI arrived. ARTIS then entered the UCV and talked with the UC.


*ARTIS at trunk of suspect vehicle*


*ARTIS in UCV*




*ARTIS showing UC firearm in UCV*     *ARTIS in UCV holding payment*

While in the UCV, ARTIS showed the UC a non-serialized, PMF, Glock style, 9mm, firearm integrated into a MCK P80 conversion kit with foldable stock, which converted the pistol into a rifle with a barrel of less than 16 inches. ARTIS demonstrated how to separate the firearm from the conversion kit and explained how to reassemble it. ARTIS then provided it to the UC as well as a non-serialized PMF, Glock style, 9mm, pistol and one MCD in exchange for $2,500 of pre-recorded ATF funds. During the sale, ARTIS explained to the UC how to use the MCD to make a semi-automatic pistol fully automatic. The MCD that ARTIS sold the UC on September 25, 2024, has been seized and inspected. A preliminary examination by the ATF indicated it had the design features and characteristics of a of known MCD known as a "Glock switch," which is a machinegun as defined in in 26 U.S.C. § 5845(b).



*Purchased Evidence from September 25, 2024, Controlled Purchase*

**OCTOBER 2, 2024 – CONTROLLED PURCHASE OF TWO FIREARMS**

On October 2, 2024, ATF Special Agents organized a controlled purchase operation for the purchase of two firearms from ARTIS in exchange for $2,800. For this controlled purchase, the UC arranged to meet with ARTIS in the same parking lot as the September 25, 2024, controlled purchase described above. The UC traveled to the purchase location in the UCV and arrived at approximately 3:11 p.m. ARTIS arrived at the purchase location at approximately 3:49 p.m. ARTIS removed two bags from the trunk of his vehicle and brought the bags into the UCV.

   

*ARTIS at trunk of suspect vehicle*     *ARTIS with two bags*

After entering the UCV, ARTIS pulled a non-serialized, PMF, AR style, 5.56/.223 caliber, pistol from one of the two bags he was carrying and showed it to UC. ARTIS also took out three magazines loaded with a total of ninety (90) rounds of green tip .223 caliber ammunition (30 in each magazine). ARTIS then pulled out a shoulder stock from the same bag and told UC the stock attaches to the AR style pistol. ARTIS integrated the stock onto the AR style pistol and stated, "hella illegal attachment." Based on my training and experience, ARTIS appeared to be acknowledging that the stock on the firearm converted the firearm into a short-barrel rifle, which he knew to be "illegal." UC told ARTIS that UC's associates in Mexico were interested in "shorties," referring to short barrel rifles. ARTIS then retrieved a non-serialized PMF, Glock style, 9mm, pistol from the second bag (small brown bag) ARTIS brought with him. During the transaction, ARTIS sold the firearms to the UC in exchange for $2,800 in pre-recorded ATF funds.

  

*ARTIS in UCV*         *ARTIS handling firearms in UCV*

The 5.56 caliber SBR was seized, inspected, and determined to have a barrel less than 16 inches in length.



*Purchased Evidence from October 2, 2024, Controlled Purchase*

**OCTOBER 23, 2024 – CONTROLLED PURCHASE OF TWO FIREARMS**

On October 23, 2024, ATF Special Agents organized a controlled purchase operation for the purchase of two firearms from ARTIS in exchange for $1,000. For this controlled purchase, the UC arranged to meet with ARTIS in a parking lot in Escondido, which is within the Southern District of California. The UC traveled to the purchase location in the UCV and arrived at approximately 1:00 p.m.  ARTIS arrived at the purchase location at approximately 1:10 p.m. and was observed exiting from the passenger's seat of a vehicle while carrying a brown bag before entering the UCV.





*ARTIS in UCV*     *ARTIS holding MCD*     *ARTIS leaving UCV*

After entering the UCV, ARTIS pulled an MCD out of his pocket and handed it to UC. The MCD appeared to have scratches and appeared worn. ARTIS said it worked, and he had personally used it. ARTIS then pulled out a black, non-serialized, Glock style PMF, 9mm pistol from the bag he was carrying. He removed a large capacity magazine from the pistol and UC observed it was loaded with ammunition. Later, it was determined the magazine had sixteen (16) rounds of 9mm ammunition in it. While talking, UC paid ARTIS $1,000 in ATF pre-recorded funds for the firearms. The MCD that ARTIS sold the UC on October 23, 2024, has been seized and inspected. A preliminary examination by the ATF indicated it had the design features and characteristics of a known MCD known as a "Glock switch," which is a machinegun as defined in 26 U.S.C. § 5845(b).

*Purchased Evidence from October 23, 2024, Controlled Purchase*

**November 21, 2024 – CONTROLLED PURCHASE OF THREE FIREARMS**

On November 21, 2024, ATF Special Agents organized a controlled purchase operation for three firearms from ARTIS in exchange for $2,300. For this controlled purchase, the UC arranged to meet with ARTIS at the same parking lot in Escondido as the October 23, 2024, controlled purchase. The UC traveled to the purchase location in the UCV and arrived shortly before 2:00 p.m. ARTIS arrived at the purchase location at approximately 2:13 p.m. and exited the vehicle and removed a small bag from the trunk before entering the UCV.


*ARTIS walking to UCV with bag*


*ARTIS in UCV holding payment*

After entering the UCV, ARTIS sold the UC three non-serialized 9mm PMF handguns in exchange for $2,300 in pre-recorded ATF funds.


*Purchased Evidence from November 21, 2024, Controlled Purchase*

## ADDITIONAL INVESTIGATION

As part of their investigation, ATF Special Agents have conducted a query of ARTIS. The query determined ARTIS does not currently, nor has ever held, a Federal Firearms License to sell or manufacture firearms. The investigation is ongoing.

## **REQUEST FOR SEALING**

It is further respectfully requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of this complaint, including the probable cause statement and arrest warrant. Sealing is necessary because premature disclosure of the contents of this probable cause statement and related documents may cause the defendant to flee and may cause destruction of evidence and may have a negative impact on this continuing investigation.