ADAM GORDON
United States Attorney
JAMES REDD
Illinois Bar No. 6315678
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: 619-546-9661
james.redd@usdoj.gov

Attorneys for Plaintiff United States of America

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 25-CR-558-AJB |
|---|---|
| Plaintiff, | **THE UNITED STATES'** |
| v. | **SENTENCING MEMORANDUM** |
| TAYLOR ARTIS, | |
| Defendant. | |

Defendant Taylor Artis operated as a San Diego-based gun trafficker who has now been convicted of illegally selling 10 firearms for a total of $8,600 from September 2024 to November 2024. Notably, many of the firearms Defendant sold during this investigation were privately made, non-serialized firearms (i.e., ghost guns), short-barreled rifles, or machinegun conversion devices. Throughout the course of the investigation, Defendant displayed a deep knowledge of firearms and ready access to both serialized and non-serialized and firearms—including firearms he knew were illegal to possess, let alone sell without a license. For the reasons set forth in this memorandum, the United States respectfully requests that Defendant be sentenced to 60 months in custody followed by 3 years of supervised release.

## FACTUAL BACKGROUND

This investigation began in September 2024, when ATF became aware that Defendant was selling unserialized firearms. Members of the investigative team coordinated several controlled purchases of firearms from the Defendant between September 2024 and November 2024. The first controlled purchase took place on September 25, 2024.

On September 25, 2024, ATF purchased a privately made, non-serialized short-barreled 9mm rifle, two high-capacity 9mm ammunition magazines, one 9mm ghost gun, and one machinegun conversion

`

device from defendant for $2,500. During the sale, Defendant demonstrated a deep knowledge of firearms and confirmed he could supply firearms to the purchaser as need in he future.

 

*Defendant during the September 25, 2024 deal (left) and firearms sold during that deal (right)*

The next purchase took place just a few days later on October 2, 2024.

On October 2, 2024, ATF purchased two firearms from Defendant in exchange for $2,800. The two firearms Defendant sold during this transaction were: (1) a non-serialized 5.56 caliber short-barreled; and (1) an unserialized 9mm ghost gun. In addition to the guns, Defendant sold the agent three high-capacity magazines compatible with the high-caliber rifled sold during the deal.

 

*Defendant during the October 2, 2024 deal (left) and firearms sold during that deal (right)*

Three weeks later, on October 23, 2024, Defendant met up to sell the agents more firearms, including another machinegun conversion device and an 9mm ghost gun pistol. Defendant collected $1,000 for those firearms. In the days leading up to this deal, Defendant communicated with the agent via text message. Those text messages demonstrate that defendant was the one making or assembling some of the firearms defendant was selling. A 3D printer control panel is seen in the background of pictures sent by Defendant.

Screenshots of the messages appear below with the defendant's messages in white and the agent's messages in green.





*Image of text messages from Defendant to the undercover ATF agent, including Defendant displaying firearms next to a 3D printer control panel (left – circled in red) and a message in which Defendant refers to getting "everything set back up" so he "can star working on more asap" (right).*

During the October 23, 2024 controlled purchase, Defendant told the agent that it takes him (Defendant) approximately 30 hours to 3D-print a pistol. Defendant told the agent that the unserialized firearm sold during the October 23, 2024 was made from PolyLite material, which is a 3D printing filament.  Those statements further demonstrate Defendant's involvement in manufacturing firearms that he later sold to customers, including the undercover agent in this case.

The final gun deal was completed on November 21, 2024. During this deal, Defendant sold agents three 3D-printed handguns in exchange for $2,300. During the deal, Defendant confirmed the three 3D printed guns being sold were made of the same material as those defendant had previously sold to agents.

3

`

 

*Defendant counting payment for the 3D printed guns (left) and guns sold on November 21, 2024 (right)*

**RECOMMENDATION**

The government joins the United States Probation Office's recommendation that this Court sentence Artis to 60 months in custody, which is the statutory max. However, given the aggravated offense conduct as stipulated in the plea agreement, a 60-month sentence is 18 months below the low end of the advisory guideline range of 78–97 months. The United States does not recommend a variance in this case given the prolific gun manufacturing and trafficking ability displayed by Defendant, the number of firearms involved, the characteristics of those firearms, and the amount of money Defendant demonstrated he could earn through this illegal activity.

Through the roughly four-month investigation, Defendant sold on average one firearm per week at an average price of just under $1,000 each. Defendant stated he was in the business of printing firearms and displayed an ability to source other firearm materials to complete those firearms. Given Defendant's substantial dealings in dangerous weapons, the government does not recommend a variance below the advisory guidelines in this case.

//

//

`

**CONCLUSION**

For the foregoing reasons, the Court should sentence Defendant Taylor Artis to 60 months in prison followed by three years of supervised release.

DATED:  September 29, 2025                    Respectfully submitted,

ADAM GORDON
United States Attorney

/s/ James Redd
James Redd
Assistant United States Attorney

5

`